Good morning, Your Honors. If it may please the Court, my name is Asbar Iskanian. I'm the attorney for the petitioner Gurgen Khudaverdiants. Mr. Khudaverdiants is a citizen of Iran. He is Armenian Christian and his claim was based on persecution in Iran because of his nationality and his religion. The IJ granted Mr. Khudaverdiants withholding a higher standard than asylum but denied his asylum because the IJ believed that Mr. Khudaverdiants did not file within the one-year required date from the date of his arrival. However, the IJ found Mr. Khudaverdiants to be a credible witness. There was evidence as to the date of his filing of asylum claim which was August 6, 2001. There was evidence submitted and testimony that he was imprisoned in Iran from July 2000 all the way to January 25, 2001. There was evidence of a receipt of posting bail on January 26, 2001. Hold on a second, Counsel. There was evidence proffered regarding the arrest warrant, the But did you ever offer any evidence to authenticate it? As far as Any of these documents? We cannot authenticate those documents. So you're not answering my question. Did you offer any evidence? No. No, Your Honor. Did the government stipulate to the foundational requirements to authenticate these pieces of these documents? They did not stipulate, but however Third, did the immigration judge make a finding as to the authenticity of these documents and if so, upon what evidence? I believe the judge, immigration judge, found as a whole, Gurgen Khudaverdiants to be a credible witness. And in fact, he indicates in his decision and when he says What you're saying is that if he finds Khudaverdiants a credible witness and if Khudaverdiants testifies that these documents are authentic, then that is sufficient evidence to bottom a finding that the documents are authentic. And therefore, there's substantial evidence to show, well, we're compelled to find that he entered within the one-year period. That's correct, Your Honor. Okay. Did the I.J. specifically rely on the summons in his decision? Didn't he call out Exhibit 3? His decision, I apologize, Your Honor. His decision was very brief. It did not go into details. In fact, he stated, I do not know of any negative information in the record as to this respondent. And it's on administrative record page 34. So, in fact, he says he does not find any negative information regarding this respondent. So, but as far as he's Counsel, well, you can finish that point. But then, could you address what is the significance of why Petitioner wants the asylum grant when withholding is already granted? The reason being, Your Honor, first of all, withholding is a kind of a temporary relief. The government can take it away at any time they feel that conditions in Iran have changed. Second, he has spouse and children that would want to join him. With withholding, they cannot. With asylum, they can. And thirdly, with withholding, you're never you do not ever feel that you are a citizen of this country, because you cannot adjust to any permanent residency or citizenship. So you're in a very temporary position. Okay. I understand that. Thank you. Thank you. So, Your Honor, as far as this dates, if the court believes that the respondent I mean, Mr. Khodavarian was outside the country on this certain dates, all the way going back to May 16th of 2001, and he applies for asylum on August 6th of 2001, there's no way he could have been in the United States, and the application would have been filed within the one-year period time. So, I mean, as far as his He testified inconsistently. At one time, he testified that he left Iran in June 2001. And another time, he testified that he arrived in the United States in April 2001, two months before he had left Iran. When there is disputed testimony from the petitioner, then if there is a lack of undisputed facts, don't we lack jurisdiction to review the determination that he did not timely file? Yes and no, Your Honor. I believe as far as this Court has jurisdiction when applying the legal standard to the facts. Yes, but we can't apply a legal standard if there are facts in dispute. We can apply a legal standard when the facts are undisputed. Well, if we apply to the facts that are undisputed, being the dates that he was outside the United States, those are not disputed. And if they're not disputed Oh, yes, they are. Because the facts that he was the dates he was outside the United States, on the one hand, he says, I was outside the United States in Iran until June 2001. And on the other hand, he says, I was in the United States in April 2001. There's a 60-day error there, inconsistency. I believe that I.J. also understood that because Iran has different Eastern calendars, and there's the Christian calendar, or the Western calendar that we use, and the Iranians use dates which are, I believe, a few hundred years apart from the Western calendar. Was there any evidence submitted to the immigration judge by the petitioner at the hearing of those two calendars to attempt to straighten out the inconsistency between these dates? I believe either counsel raised that issue or the judge himself raised that issue and asked the interpreter to look at the dates and asked the interpreter if there were any difference. Could you please give me a citation to any portion of the record which indicates that analysis? Because that would be a very important issue, would it not? If I may reserve my time, Your Honor, and I'll look up. Why don't you do that? Thank you, Your Honor. May it please the Court. I'm Stella Lizelli-Ishmani for the government. With respect to, again, as asylum had been, or I'm sorry, as withholding had been granted, there is also only one issue before this Court, and that is whether this Court has jurisdiction to determine whether petitioner timely filed his asylum application, where there is disputed fact involved. As Judge Bea was getting to, the record does establish that both the immigration judge, the immigration judge was attempting to reconcile both the Western calendar with the Iranian calendar, and multiple times asked for specific, asked for, asked both the translator, petitioner's counsel, and petitioner that he was speaking in Western dates. He got acknowledgment from petitioner and from the translator that, in fact, they were referring to Western dates. But let me ask you this question. Obviously, there is some dispute about April and June being arrival dates. Both of those, of course, are within a year, but we also, don't we have a finding here by the IJ that he was, in fact, in prison in Iran until January? So if that were true, he'd have to have been in this country less than a year. I think, with respect to the documentation that states that he was released on bail following January 25, 2001, in Iran, Judge Bea commented on the fact that none of these documents are authenticated. Is it necessary to have corroboration? His testimony was believed. The IJ said he believed him, and that's why he withheld removal. With respect to dates, however, I would, the government would disagree. In that, petitioner consistently, I'm sorry, inconsistently testified that he was released in January 2001, and also in October 2000. So in that regard... But that's not the IJ's finding, is it? The immigration judge agreed, made no specific credibility determination, but noted that the Ninth Circuit is very heavy-handed in Iranian claims, and as such, he was not going to move contrary to what has been recently being held. I don't think he used the word heavy-handed. Maybe liberal. I have a question for the government. I hope it's not heavy-handed. Here it is. Did the government ever say to the IJ, this guy was not in prison in Iran until the date indicated? The government's counsel at the immigration proceeding did not specifically challenge the authenticity of those records. So if the counsel didn't, isn't it sort of hyper-technical with this record for us to say that the record doesn't show he entered within a year, in view of the other finding of the IJ, that he was credible? Not necessarily. Okay. Not necessarily, in that I would argue, the government would argue that the petitioner had already contradicted himself in terms of date. The immigration judge had specifically – let's see, I am on page 104 of the record. The immigration judge had asked, now, sir, when, what month and year were you actually held for the three-month period? Petitioner answered, it was in the year 90. He then stated, it was in the year 1999. Do you recall the month, the immigration judge asked? 2000, in 2000. Do you recall the month in 2000, the immigration judge clarified? He speaks in the Farsi calendar, and he says, I can't exactly remember. It was in the summer. The interpreter commented that it was a certain month and that that was the So, sir, you were held in the summer of the month of July in 2000, and you were released from prison three months later, correct? Interpreter would like to request a repeating of the question. Okay. So you were approximately released in July of 2000 and – I'm sorry, were held in July of 2000 and released approximately 90 days later, correct? Yes, the petitioner stated. So, sir, it was approximately October of 2000 that your wife paid the bribe, is that correct? Yes. And thereafter, the counsel for government on page 106 said, now, sir, can you explain why in the statement attached to your asylum application at Exhibit 2, you stated, in January 2005 – January 25 of 2001, I was released from prison. Petitioner explained again on 107, correct, I was released from detention, but every day I had to go and – correct, but you testified now on cross-examination, you were released approximately October 2000, yet your written submission says January 5th, 2001. Can you explain that? Today, I apologize. Perhaps I have forgotten. So by the time the immigration judge is making these findings and the Department of Homeland Security has established that there's an inconsistency, the immigration judge shortly thereafter concluded proceedings and found for withholding. I would argue that the immigration judge did not necessarily make a credibility determination, but did find that Petitioner had submitted sufficient evidence for withholding. But he couldn't – I mean, he couldn't have withheld removal unless he found what the guy said credible. Otherwise, there would have been absolutely no basis for it, right? No sufficient evidence, I suppose. But with all due respect, with the inconsistencies in the record, that is enough to challenge the – factually challenge the dispute. I understand your position, but, I mean, wouldn't you have to concede that he at least believed Kounoverdian's to the extent that he withheld removal? To the extent that he – he at least believed him to the extent that he had been charged as a spy in Iran for the U.S. government, absolutely. But in terms of when he came into this country, there was not a blanketed credibility finding stating that everything was found to be truthful. Petitioner – immigration judge specifically had an issue with the fact that the immigration officer stated that he did not – you know, as it works, the immigration officer can only approve or refer an asylum application, but cannot deny one. In finding Petitioner had failed to credibly establish that he timely filed, he referred the immigration – Mr. Kounoverdian's case over to an immigration judge. At that point, there was – I believe the immigration judge states that there – the case had been on the docket for three, three and a half years by the time it had come before the immigration judge. Petitioner and his counsel were on record that there was nothing establishing that he had timely come into this Again, unlike Ms. Hakobian's case, the notice to appear clearly states that it's an unknown time, unknown entrance. Okay? Thereafter, the immigration officer says, I don't believe you came when you said you came. I'm referring you to an immigration judge. Thereafter, Petitioner filed, and Petitioner's counsel, both who speak the same language, bring no evidence of corroboration when asked where his tickets were or anything that could corroborate the timing of his entrance. He said he had lost everything. When asked for anybody, you know, a witness, multiple times through continuations, he failed to bring anyone. And I believe Petitioner's own counsel says, I asked for him to bring a witness, but nobody came. You know, facing those facts, this is clearly a disputed issue. And as Sila has shown in this circuit, at the very least, these undisputed – or these disputed facts cannot be measured in the statutory interpretation and, therefore, are still under the purview of the agency and are shielded from review at this time. Unless you have further questions, we would just ask that Petitioner – that this Court dismiss the case for lack of jurisdiction in that there is a disputed factual element. Thank you. Thank you. Your Honor, as far as your question, it's the Western calendar, Eastern calendar is on administrative record, page 76. To this date, the government had never even brought up the issues as far as there were any disputes besides the date of arrival. They didn't even appeal when the judge granted withholding. If they believed that this was not a credible case, they could have appealed the case. They never did. Your problem is not a matter of credibility on the usual standard. Your problem is that as to the date of arrival, the statute requires the Petitioner to present – to establish by, quote, clear and convincing evidence that he filed his asylum application within one year. Clear and convincing evidence, that's sort of a fraud standard of proof rather than the normal negligence or contractual standard of proof. Our argument is, Your Honor, the date of arrival in a way is not relevant because if he was outside the country until May of 2001 and the asylum application was filed on August of 2001, then the statute indicates that he has to file within one year It doesn't say that – well, it does say from the date of arrival, but it does not state that The evidence that you have that he was outside the country in May of 2001 is the fact that the summons was served by the Iranian authorities. Where is the proof that it was served on him and not his wife? Even if we don't look at the May 2001 evidence, we go back to January 25th evidence that he was in prison. Still, it's within the one-year period time. And what's the evidence that he was in prison in January of 2001? He has evidence that was submitted to court indicating that he was in prison on – up to that date. And the following date, I believe his sister posted bail to have him released. And that's an evidence, too. And if you need the pages of the record – Oh, that's when she – the wife paid $22,000, either dollars or whatever, to have him released from jail on January 26th. Yes, Your Honor. Our argument is the dates, when there's so – a vast difference between the Persian calendar and the Western calendar, and we expect this person within a few seconds in his mind to convert dates, which is not like just one day of a week or a thing. It's like a few hundred years sometimes, because they go with a completely different calendar. They go with completely different months and different days of the months. And this person, who in his entire life, in his 50s, his entire life has gone with the Persian calendar, now comes to the United States, has to convert it within seconds to the Western calendar. Counsel, how do you deal with the argument that it is still not undisputed that he was in Iran in January of 2001 because his own testimony was that he was released from jail 90 days after July 2000, as counsel read from the record? That's a contradiction, isn't it? It is, because, again, our argument is that converting dates from the Persian calendar to the Western calendar was a problem for him as far as to convert those dates. So is there some evidence which would allow us to say that October 2000 in the Persian calendar is indeed January 2001 in the Gregorian calendar? No, Your Honor. As far as in the record, there's no evidence. How do we determine that your man, when he said October 2000, was talking about the Persian calendar and not the Gregorian calendar? There's no evidence that is going to help us in that matter. But as far as our, again, I'm going back to the same argument, is that if he's believed that he was outside the country on those dates, then I don't believe it's relevant as far as which date he got into the United States  So he could have that memory problem, or there might be a problem as far as the time. No. If he got out in October 2000, he could have come to the United States at that time. Now the question is, did he file within one year of release in October? What was his date of arrival? I believe he put it as initially he had marked as April 2001 or June 2001. Yes. If either of those dates are correct and he was in this country in October of 2000, he'd be timely. In his application, initially he had put saying that he left Iran March 20, 2001, arrived April 11, 2001. Now then it was crossed out. I believe at the interview he corrected himself saying that he left Iran in June of 2001. So if he left June of 2001, he arrived in June of 2001. Thank you very much. I'm sorry I've kept you over your time. Thank you for the argument. You're welcome. The case of Kuna Verdiant v. Casey will be submitted. Counsel, thank you very much for an interesting argument.
judges: Gould, Bea, Sedwick